# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 19-454

**LATASHIA V. PEREZ, BOTH INDIVIDUALLY AND ON BEHALF OF UNBORN CHILD OF TRAVIS CHIOKAI (DECEASED)**

**VERSUS**

**IRBY CONSTRUCTION COMPANY, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT NO. 3
PARISH OF CALCASIEU, NO. 17-07615
DIANNE M. MAYO, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## VAN H. KYZAR
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Billy Howard Ezell, D. Kent Savoie, and Van H. Kyzar, Judges.

**AFFIRMED IN PART
AND REVERSED IN PART.**

**John J. Rabalais**
**Rabalais, Unland**
**1404 Greengate Drive, Suite 110**
**Covington, LA 70433**
**(985) 893-9900**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Irby Construction Company**
    **Old Republic Insurance Company**

**Thomas A. Filo**
**Cox, Cox, Filo, Camel & Wilson, L.L.C.**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Latashia V. Perez, Individually and On Behalf of her Minor Child,**
    **Avery C. Chiokai**

**KYZAR, Judge.**

The defendants, Irby Construction Company and Old Republic Insurance Company, appeal from a workers' compensation judgment denying their motion for summary judgment and granting summary judgment in favor of the plaintiff, Latashia V. Perez, individually and on behalf of her minor child, Avery C. Chiokai. For the following reasons, we affirm in part and reverse in part.

## DISCUSSION OF THE RECORD

This matter stems from the November 7, 2017 death of Travis Chiokai, an employee of Irby Construction Company. On that date, Mr. Chiokai was working on electrical lines while attached to a "long line" from a helicopter. He suffered fatal injuries when he fell 100 feet to the ground after the line securing him to the helicopter was severed. At the time of his death, Mr. Chiokai was engaged to and living with Latashia V. Perez, who was pregnant with their unborn child.

On November 20, 2017, Ms. Perez, individually and on behalf of her unborn child, filed a disputed claim for compensation against Irby Construction and Republic Insurance Company (referred to collectively as Irby Construction), seeking death benefits as a result of Mr. Chiokai's work-related accident and penalties and attorney fees due to Irby Construction's handling of her claim. Irby Construction answered, disputing Ms. Perez's claim for benefits and arguing that the unborn child's claim was premature at that time.

Avery C. Chiokai was born on December 15, 2017, and Mr. Chiokai was confirmed as her father via paternity testing. Commencing with her birth, Irby Construction began paying her death benefits in the amount of $624.57 per week.

On January 19, 2018, Irby Construction filed peremptory exceptions of no cause and no right of action, asserting that as Mr. Chiokai's concubine, Ms. Perez was not entitled to death benefits pursuant to La.R.S. 23:1253. However, following

a hearing on the exceptions, the workers' compensation judge (WCJ) denied Irby

Construction's exceptions. A written judgment denying the exceptions was rendered

by the WCJ on February 28, 2018. Thereafter, Irby Construction sought a writ of

certiorari and review from this court. Although not contained in the appeal record,

this court denied Irby Construction's writ on June 6, 2018. In doing so, this court

stated:

> No evidence was adduced at the hearing on the exception. Thus,
> whether Ms. Perez occupied the position of concubine, which was the
> burden of proof imposed on Applicants in their exception, was not
> demonstrated. We do not reach the question of whether, as concubine
> of Mr. Chiokai and the mother of his child, Ms. Perez is entitled to death
> benefits despite the language of La.R.S. 23:1253, because it was not
> proven that she was his concubine.

*Perez v. Irby Constr. Co.*, 18-192, p. 2 (La.App. 3 Cir. 6/6/18), 247 So.3d 906, 908.

Thereafter, Irby Construction moved for summary judgment, re-urging its

argument that Ms. Perez was not entitled to death benefits pursuant to La.R.S.

23:1253 because she was Mr. Chiokai's concubine. It further argued that Avery

could only receive death benefits from the date of her birth, rather than from the date

of Mr. Chiokai's death. In response, Ms. Perez filed a cross motion for summary

judgment, in which she stated that "all parties have agreed to try the remaining

claims via stipulation and Cross Motions for Summary Judgment." She further

asserted that the only unresolved issues dealt with her claim for death benefits,

Avery's claim for death benefits for the time period between Mr. Chiokai's death

and her birth, and the issue of penalties and attorney fees. Irby Construction then

moved for summary judgment on the issue of whether it was arbitrary and capricious

in its handling of Ms. Perez's claim.

The parties submitted the matter based on the following stipulations:

1.    Avery C. Chiokai, born December 15, 2017, is the daughter of
      Travis Chiokai, who was killed in an on-the-job accident on

November 7, 2017, while in the course and scope of his employment with Defendant, Irby Construction Co.

2. At the time of his death, the Louisiana maximum compensation rate for all indemnity benefits was $653.00 per week.

3. At the time of the accident, Travis Chiokai's average weekly wage was $1,921.75.

4. Irby Construction Co. and Old Republic Ins. Co. have paid death benefits under the Louisiana Workers' Compensation Act at the rate of $624.57 per week commencing on Avery's date of birth, December 5, 2017.

5. Irby Construction Co. and Old Republic Ins. Co. have not paid any death benefits to Avery between November 7, 2017 (the date of Travis' death) and December 15, 2017 (the date of Avery's birth).

6. If owed, the amount of unpaid death benefits for Avery will be $3,033.63 (4 weeks and 6 days).

7. Irby Construction Co. and Old Republic Ins. Co. have disputed (and have not paid) death benefits to Avery's mother, Latasha Perez.

8. If owed, death benefits to Latashia Perez will currently be $28.43 per week (the difference between the death benefit paid to Avery and the maximum workers' compensation rate in effect on the date of the accident).

9. If owed, back due death benefits to Latashia Perez as of March 11, 2019 will be $1,990.10 ($28.43 x 70 weeks).

10. Latashia Perez was not married to Travis Chiokai at the time of his death and she was a "concubine" within the meaning of La. R.S. 23:1253.

11. Latashia Perez and Avery Chiokai were "wholly dependent" upon Travis Chiokai's earnings for support at the time of his death within the meaning of La. R.S. 23:1231 and La. R.S. 23:1232(8).

12. Claimants stipulate that they are only seeking penalties and attorney fees for the non-payment of Avery and Latashia's benefits and therefore are entitled to a maximum of two penalties and attorney fees.

13. In the event the Court makes an award of penalties an[d] attorney fees in connection with the non-payment of Avery's benefits, and determines that Irby Construction Co. and Old Republic Ins. Co.

3

were arbitrary and capricious in failing to pay for those benefits, the parties stipulate to the sum of $2,000 in penalties and $3,000 in attorney fees.

14. In the event the Court makes an award of penalties and attorney fees in connection with the non-payment of Latashia's benefits, and determines that Irby Construction Co. and Old Republic Ins. Co. were arbitrary and capricious in failing to pay those benefits, the parties stipulate to the sum of $2,000 in penalties and $3,000 in attorney fees.

15. None of the above stipulations shall have the affect of admitted [sic] or conceding that any benefits are owed, and both parties reserve their rights to appeal any adverse rulings and to assert any potential credits owed.

16. Notwithstanding paragraph 15, the parties agree that neither the claimant no[r] employer or insurer will appeal the agreed upon amount of penalties and attorney fees although each reserve their right to appeal entitlement to any award of penalties and attorney fees.

17. The parties agree that these stipulations shall form the sole submissions with respect to the parties Cross Motions for Summary Judgment and the Court may decide the Motions based solely on legal arguments and entitlement (or non-entitlement) to benefits and or penalties and attorney fees as a matter of law.

Following a March 20, 2019 hearing, the WCJ rendered oral reasons, finding that Ms. Perez was entitled to death benefits and that Avery was entitled to death benefits from the date of Mr. Chiokai's death. The WCJ further held that Irby Construction was arbitrary and capricious in its handling of this claim and awarded both Ms. Perez and Avery $2,000.00 in penalties and $3,000.00 in attorney fees. A written judgment was rendered in this matter on March 27, 2019. It is from this judgment that Irby Construction appeals.

On appeal, Irby Construction raises six assignments of error:

1. The Workers' Compensation Judge erred when she awarded unpaid death benefits to the minor child, Avery C. Chiokai, in the amount of $3,033.63 for the time period between the date of the November 7, 2017 accident and when the child was born alive.

4

2.  The Workers' Compensation Judge erred when she awarded back due death benefits to Latashia V. Perez in the amount of $1,990.10 as of March 11, 2019.

3.  The Workers' Compensation Judge erred when she awarded death benefits be paid to Latashia V. Perez in the amount of $28.43 per week from March 11, 2019 forward.

4.  The Workers' Compensation Judge erred when she awarded a $2,000.00 penalty to Latashia V. Perez, on behalf of the minor child, Avery C. Chiokai, and $3,000.00 in attorney fees to Thomas A. Filo in connection with the non-payment of benefits to the minor child, Avery C. Chiokai.

5.  The Workers' Compensation Judge erred when she awarded a $2,000.00 penalty to Latashia V. Perez and $3,000.00 in attorney fees to Thomas A. Filo in connection with the non-payment of death benefits to Latashia V. Perez.

6.  The Workers' Compensation Judge erred when she denied the Motion for Summary Judgment filed by the Appellants and not dismissing the action of the Appellees with prejudice.

**OPINION**

The supreme court set forth the law applicable to summary judgment in

*Maggio v. Parker*, 17-1112, p. 4 (La. 6/27/18), 250 So.3d 874, 878, as follows:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. It is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law[.] *See, e.g., Dunn v. City of Kenner*, 15-1175, p.10 (La. 1/27/16), 187 So.3d 404, 412.

In this instance, the parties have stipulated to the facts at issue, thus, there remain no genuine issues of material fact, and the only issue before us is whether either party is entitled to judgment as a matter of law.

The all-important question with regard to death benefits is whether the person seeking the benefits was dependent upon the employee for support at the time of the his/her death. La.R.S. 23:1254. "[T]he mere expectation or hope of future contribution to support of an alleged dependent by an employee, shall not constitute

5

proof of dependency as a fact." *Id.* The amount of death benefits awarded to the employee's dependents is based upon whether they were wholly or partially dependent on the employee for support, with the maximum amount awarded being no more than 65% of the employee's wages. La.R.S. 23:1232.

Under certain circumstances, the employee's spouse is conclusively presumed to be wholly and actually dependent. La.R.S. 23:1251. This presumption applies to the spouse who was living with the employee at the time of his death. La.R.S. 23:1251(1). It also applies to the employee's minor child (and a child, who is over the age of eighteen, if the child is physically or mentally incapable of earning) (1) if the child was living with the employee at the time of his death or (2) if the child was not living with the employee, but the employee was ordered to pay child support, regardless of whether the support was being paid. La.R.S. 23:1251(2) and (3). This presumption extends to the age of twenty-three if the child is enrolled full-time in an accredited educational institution. *Id.* Absent the conclusive presumption of dependency provided by La.R.S. 23:1251, dependency is "determined in accordance with the facts as they may be at the time of the accident and death[.]" La.R.S. 23:1252.[1]

Other than through marital and parental relationships, dependency may arise if a familial relationship exists between the employee and the person seeking death benefits. Louisiana Revised Statutes 23:1253 provides, in part, that "[n]o person shall be considered a dependent, unless he is a member of the family of the deceased employee, or bearing to him the relation of husband or widow, or lineal descendant or ascendant, or brother or sister, or child." However, La.R.S. 23:1253 was amended

---

[1] The sole exception to the rule of dependency is provided when the deceased employee leaves no surviving legal dependents, whether wholly or partially dependent. In that instance, La.R.S. 23:1231(B) awards a lump sum of $75,000.00 to the employee's surviving children, who are over the age of majority, or barring none, to the deceased's surviving parents. La.R.S. 23:1231(B)(2), (3).

6

by 2012 La. Acts No. 793, § 1, to include the following language: "Regardless of dependency, no payments shall be made to the concubine of the deceased employee nor the concubine's children, unless those children are related to the deceased employee by blood or adoption."

The main questions raised by this appeal are: (1) whether Avery, who was born after Mr. Chiokai's death, is entitled to death benefits from the date of his death, and (2) whether Ms. Perez, who the parties stipulated was Mr. Chiokai's concubine and was wholly dependent upon him at the time of his death, is entitled to death benefits as a member of his family pursuant to La.R.S. 23:1253.

*Assignment of Error Number One*

In its first assignment of error, Irby Construction argues that the WCJ erred by awarding Avery death benefits in the amount of $3,033.63, representing the time period between Mr. Chiokai's accident and her birth. We disagree, but for other reasons.

In her oral reasons for judgment, the WCJ explained her reasoning for awarding Avery death benefits for the time period in question:

> The next issue up for discussion is whether or not the child is entitled to benefits prior to death. Under Louisiana Civil Code Article 24, there are two kinds of persons, natural and juridical persons. A natural person is a human being. Civil Code Article 25. Commencement and end of natural personality: Natural personality commences from the moment of live birth and death. Civil Code Article 26, Unborn Child, an unborn child shall be considered a natural person for whatever relates to its interests from the moment of conception.
>
> Applying Civil Code Article 26 to the facts of this case, the dependent child was born four weeks and six days after the death of the deceased father; and while in the mother's womb, [she] was considered a natural person because there was workers' compensation benefits that were to [her] interest and benefits.
>
> [Her] dependency was established from the moment of conception because every time [her] mother ate, [she] ate; every prenatal vitamin she took, [she] took; every time [her] mother went to the doctor, [she] was checked. But for the nourishment provided for

7

[her] mother through [her] deceased father, [she] may not have been born alive. Being born alive was [a] prerequisite of [her] getting the death workers' compensation benefits that was to [her] interest and benefited [her].

. . . .

After reviewing the briefs, the arguments, and the stipulation of the fact, this court grants that there's only one conclusion that can be reached, that Avery was a human being from the moment of conception, thus entitled to four weeks and six days of death benefits.

After performing a de novo review of this issue, we find that the WCJ erred in awarding Avery death benefits based on a finding of her actual dependency upon Mr. Chiokai pursuant to La.R.S. 23:1252. Rather, we find that Avery is entitled to death benefits for the time period in question because she is conclusively presumed to have been wholly dependent upon Mr. Chiokai via La.R.S. 23:1251(2)(A), because, although in utero, she was living with him at the time of his death.

For the purposes of the Louisiana Workers' Compensation Law, "'[c]hild' or 'children' covers only children born of marriage, step-children, posthumous children, adopted children, and children born outside of marriage who have been acknowledged under the provisions of the Civil Code." La.R.S. 23:1021(3). Although the supreme court, in *Williams v. American Employers Insurance Co.*, 237 La. 101, 110 So.2d 541 (1959), held that a posthumous illegitimate child was not included in the definition of a "child" in La.R.S. 23:1021(3),[2] the United States Supreme Court, in *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 165, 92 S.Ct. 1400, 1401 (1972), subsequently held that "Louisiana's denial of equal recovery rights to dependent unacknowledged illegitimates violates the Equal Protection Clause of the Fourteenth Amendment." In *Weber*, a dependent

---

[2] That statute provided, "'Child' or 'Children' covers only legitimate children, stepchildren, posthumous children, adopted children, and illegitimate children acknowledged under the provisions of Civil Code Articles 203, 204, and 205."

8

unacknowledged illegitimate child and a posthumous illegitimate child were classified as other dependents of the decedent. However, they received no compensation benefits as a result of the decedent's death because the maximum benefit allowable under the workers' compensation law was awarded to his four legitimate children.

In its opinion below, the Louisiana Supreme Court held that the United States Supreme Court's opinions in *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509 (1968), and *Glona v. American Guarantee & Liability Insurance Co.*, 391 U.S. 73, 88 S.Ct. 1515 (1968),[3] were inapplicable in a workers' compensation setting:

> There is nothing whatsoever in either of those United States Supreme Court opinions that would compel the conclusion in compensation cases that a state may not make a distinction between legitimate and illegitimate children which would *protect* legitimate family relationships but permit recovery by illegitimates in the absence of the former. The circumstances of those decisions did not require a holding on the issue of the right of an illegitimate child as opposed to a legitimate one, and we do not find anything in the language of the court which would bear on such a contest.

> Unlike Louisiana Civil Code Article 2315, our compensation law does not treat illegitimate children as "non persons" (as the United States Supreme Court in Levy held that the *Article* does); the acknowledged illegitimate child *is placed on a par with legitimate children*; the unacknowledged illegitimate child is not *denied* a right to recover compensation, he being merely relegated to a less favorable position as are other dependent relatives such as parents; no "wrong" has been inflicted on the deceased father by the employer from whom compensation is here sought; and no tort feasor goes free because of the law.

> For ourselves, we find nothing invidious in the distinction made in the compensation statute which would protect such legally recognized family relationships, anymore than the preference given legitimate dependent children (even illegitimate ones when they are duly acknowledged) over dependent parents. We think that such classification is permitted to the state legislature in dealing with social and economic problems, and that the Equal Protection Clause of the

---

[3] These opinions held that La.Civ.Code art. 2315, which barred an illegitimate child from recovering damages for the wrongful death of its mother and a mother from recovering damages for the wrongful death of her illegitimate child, respectively, constituted an invidious discrimination against illegitimate children and, thus, violated the Equal Protection Clause of the Fourteenth Amendment.

Fourteenth Amendment of the United States Constitution creates no barrier to it as contained in such statute.

*Stokes v. Aetna Cas. & Sur. Co.*, 257 La. 424, 433-34, 242 So.2d 567, 570 (1970).

In reversing the Louisiana Supreme Court, the Supreme Court held that La.R.S. 23:1021(3) failed to promote Louisiana's interest in protecting legitimate family relationships by denying death benefits to dependent unacknowledged illegitimate children. The Court stated, "Nor can it be thought here that persons will shun illicit relations because the offspring may not one day reap the benefits of workmen's compensation." *Weber*, 406 U.S. at 173. It further held:

> The state interest in legitimate family relationships is not served by the statute; the state interest in minimizing problems of proof is not significantly disturbed by our decision. The inferior classification of dependent unacknowledged illegitimates bears, in this instance, no significant relationship to those recognized purposes of recovery which workmen's compensation statutes commendably serve.

> The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where—as in this case—the classification is justified by no legitimate state interest, compelling or otherwise.

*Id.* at 175-76 (footnotes omitted).

With regard to posthumously born illegitimate children, the Supreme Court stated:

> The affinity and dependency on the father of the posthumously born illegitimate child are, of course, not comparable to those of offspring living at the time of their father's death. This fact, however, does not alter our view of the case. We think that a posthumously born illegitimate child should be treated the same as a posthumously born legitimate child, which the Louisiana statutes fail to do.

10

*Id.* at 169 n.7.

In *Winn v. Thompson-Hayward Chemical Co.*, 522 So.2d 137 (La.App. 2 Cir. 1988), the second circuit affirmed the lower court judgment which held that informally acknowledged illegitimate children, who were living with the decedent at the time of his death, were entitled to the presumption of dependency provided by La.R.S. 23:1251. Despite the legislature's failure to amend the definition of "child" or "children" to conform to *Weber*, the second circuit felt "mandated by the federal [and 1975 state] constitution to interpret § 1021 to include informally acknowledged illegitimates in the same classifications as formally acknowledged illegitimates and legitimates." *Id.* at 142 (alteration in original).

The version of La.R.S. 23:1021(3) in effect when *Weber* was decided provided:

> "Child" or "children" covers only legitimate children, step-children, posthumous children, adopted children, and illegitimate children acknowledged under the provisions of Civil Code Articles 203, 204, and 205.

At the time *Winn* was decided, La.R.S. 23:1021(3) had been amended to remove the reference to Article 204, which had been repealed. The final amendment to La.R.S. 23:1021(3) occurred in 2004, when it was amended to read:

> "Child" or "children" covers only children born of marriage, step-children, posthumous children, adopted children, and children born outside of marriage who have been acknowledged under the provisions of the Civil Code.

Based on the wording of La.R.S. 23:1021(3), we likewise feel constrained to interpret the definition of "child" to include a posthumously born illegitimate child such as Avery. The failure to do so would be, as *Weber* held, a violation of the Equal Protection Clause of both the United States and the Louisiana Constitutions. In this instance, the parties stipulated that Ms. Perez was the concubine of Mr. Chiokai at the time of his death and that both she and Avery were wholly dependent upon Mr.

11

Chiokai at that time. As Justice Tate stated in *Henderson v. Travelers Insurance Co.*, 354 So.2d 1031, 1033 (La.1978), "The status as concubine arises when a man and a woman live together in a permanent relationship as husband and wife, although without benefit of matrimony or a putative marriage." Because Ms. Perez is stipulated to have been Mr. Chiokai's concubine, it is admitted that she was living with Mr. Chiokai at the time of his death. Thus, Avery, who was in utero, was also living with him at the time of his death and is conclusively presumed to have been wholly and actually dependent upon Mr. Chiokai at the time of his death as his posthumously born illegitimate child. La.R.S. 23:1251. This finding was not questioned by Irby Construction, who commenced paying death benefits to Avery at the time of her birth.

The only question remaining is whether Avery's conclusive presumption of dependency entitles her to receive death benefits from the date of Mr. Chiokai's death. We find that it does.

In *Eason v. Alexander Shipyards*, 47 So.2d 114, 119 (La.App.Orleans 1950), the appellate court stated:

> The Legislature has declared that the term "child," as used in Section 8 of the Workmen's Compensation Act, shall include posthumous children, and there is no doubt in our minds that the framers of the act intended, in view of the provisions of the Civil Code which place unborn children, as to certain rights, on a parity with other children, to vouchsafe to an unborn child the same privileges and benefits under the act as are enjoyed by other children of the deceased workman. We think that it was the legislative intent that a child in utero, upon being born alive, would be entitled to the death benefits provided for in the act, the same to be computed from the time of the death of the deceased workman.

Although *Eason* involved children born of a putative marriage between the deceased and his putative spouse, this reasoning, in light of *Weber*, should also apply to a posthumously born illegitimate child conclusively presumed to be dependent upon the deceased employee.

12

The presumption provided by La.R.S. 23:1251 is a conclusive presumption "that cannot be overcome by any additional evidence or argument because it is accepted as irrefutable proof that establishes a fact beyond dispute[.] BLACK'S LAW DICTIONARY 1204 (11th ed. 2019). Based on this presumption, Avery is entitled to death benefits from the date of Mr. Chiokai's death, so long as she was born alive. *See* La.Civ.Code art. 26. Had Avery not survived birth, she would never have existed for the purposes of receiving workers' compensation benefits. *Id.* Although the *Williams* court held a prior version of La.Civ.Code art. 26[4] inapplicable in a death benefits case, that matter concerned a showing of actual dependency under La.R.S. 23:1252, based upon "the facts as they existed at the time of the employee's death.

Accordingly, because Avery is conclusively presumed to have been dependent upon Mr. Chiokai, she is entitled to the payment of weekly death benefits, equal to thirty-two and one-half percent of his wages, from the date of his death. La.R.S. 23:1251(2); La.R.S. 23:1231(A); and La.R.S. 23:1232(4). Thus, the judgment of the WCJ awarding Avery $3,033.63 in death benefits for the four-week, six-day period in question is affirmed.

### *Assignments of Error Number Two and Number Three*

In its second and third assignment of error, Irby Construction argues that the WCJ erred in awarding past and future death benefits to Ms. Perez based on La.R.S. 23:1253's language that "[r]egardless of dependency, no payments shall be made to the concubine of the deceased nor the concubine's children, unless those children are related to the deceased by blood or adoption." Irby Construction asserts that our

---

[4] Louisiana Civil Code Article 29, which formed, in part, the basis for La.Civ.Code art. 26, provided:

> Children in the mother's womb are considered, in whatever relates to themselves, as if they were already born; thus the inheritances which devolve to them before their birth, and which may belong to them, are kept for them, and curators are assigned to take care of their estates for their benefits.

interpretation of this language will be a matter of first impression for this court; we agree with this statement because no court has interpreted La.R.S. 23:1253 since its 2012 amendment.

Irby Construction argues that a plain reading of La.R.S. 23:1253 specifically forbids the payment of death benefits to a concubine, while allowing the concubine's child to receive benefits, as long as the child is related by blood or adoption to the employee. Thus, it asserts that the meaning of La.R.S. 23:1253 is unambiguous and should be applied as written. However, Ms. Perez argues that although she was Mr. Chiokai's concubine, she is still entitled to death benefits as the mother of his child. She bases her argument on past Louisiana Supreme Court precedent and the wording of La.R.S. 23:1232(8), La.R.S. 23:1252, and La.R.S. 23:1253.

During her oral reasons, the WCJ held that Ms. Perez was entitled to death benefits because she "was totally dependent on the deceased and she had a child that was a blood relative of the deceased." In so holding, the WCJ adopted her prior ruling from March 5, 2018, in which she denied Irby Construction's exception of no cause of action, wherein she stated:

> As to the issue of whether or not claimant has a cause of action and/or right of action, this court feels she does have both.
>
> The claimant lived with deceased prior to his death and became pregnant. At the time of his death, the claimant was totally dependent upon the deceased employee for everything. The baby was born who is receiving benefits and the claimant filed for her dependent benefits.
>
> Employer states that she is not a dependent of the deceased because she was a concubine; therefore, she has no right of and no cause of action.
>
> Claimant states that she is the mother of deceased's child and was totally dependent upon him at the time of his death; therefore, she has a cause of action as a dependent and she is the right person to bring said action.
>
> The Court finds that claimant was a dependent of the deceased, thus entitling her to bring said suit and, therefore, the right person to

14

bring action to seek the benefits she is due under the statute. The Court arrives at this decision by looking at three statutes and a [Third] Circuit case: LA-R.S. 23:1252 reads as follows: "In all other cases, the question of legal and actual dependency in whole or in part shall be determined in accordance with the facts as they may be at the time of [the accident and death; in such other cases if there are] a sufficient number of persons wholly dependent to take up maximum compensation, the death benefits shall be equally divided among them, and persons partially dependent, if any, shall receive no part thereof."

LS-R.S. 23:1253 in the last couple of lines states: "Regardless of dependency, no payments shall be made to the concubine of the deceased or the concubine's children, unless those children are related to the deceased employee by blood or adoption."

LS-R.S. [23:]1232(8) states: "If other dependents other than those enumerated, 32 and one half percentage of wages subject to a maximum of 65 percent of dependents."

The Court, reading these statutes together, finds the other persons can be entitled to benefits if they can show their dependency; therefore, if a woman living with a man at the time of his death and has a child that is related to him by blood. She can receive said benefits as long as it does not impinge upon that child's right to benefits. Such is the case here. Claimant was pregnant, living and dependent upon the deceased at the time of his death. A girl child was born after deceased who was related to him by blood.

In Mary Heathcoate (O/B/O Christopher Farmer – Deceased) versus D & D Drilling and Exploration, (La. Appeals 3rd Circuit, 2016), the facts are very similar to the case at hand: A mother living with the deceased at the time of death and had a child for the deceased and stated that she was dependent upon him. The employer initially then amended their answer alleging 1208 fraud. In a Motion for Summary Judgment they were able to show that Ms. Heathcoate had put the baby up for adoption and was being supported by the prospective parents. The court granted the Motion for Summary Judgment and in their discussions they stated: "To establish her entitlement to workers' compensation Ms. Heathcoate is required to show that she was financially dependent upon Mr. Farmer", LA-R.S. 23:1253. ["]Thus, the issue of a financial support is relevant to her claim.["]

In this case, claimant has established that she is related to a blood child of the deceased and her dependency.

Because she and Mr. Chiokai were not married, Ms. Perez will only receive death benefits if she is an "other dependent" under La.R.S. 23:1232(8), which allows payments to "other dependents" if the employee is survived by no legal dependents.

15

Other than the conclusively presumed dependency afforded to spouses and children by La.R.S. 23:1251, an "other dependent" must prove "legal and actual dependency in whole or in part" based upon the facts in existence at the time of the decedent's death. La.R.S. 23:1252. "No person shall be considered a dependent, unless he is a member of the family of the deceased employee, or bearing to him the relation of husband or widow, or lineal descendant or ascendant, or brother or sister, or child." The supreme court has interpreted the term "member of the family" in its broadest sense based upon the definition contained in La.Civ.Code art. 3506(12).[5] Thus, a dependent family member need not be related by a legal or blood relationship to the employee. "All that is required is a family or household and the existence of the dependency of a member thereof as illustrated by the facts of the particular case." *Archibald v. Empl'rs. Liab. Assurance Corp.*, 202 La. 89, 96, 11 So.2d 492, 494 (1942).

In *Archibald*, 11 So.2d at 493-94, the supreme court further stated:

> It is well settled that the Workmen's Compensation Act is to be liberally construed with the view of carrying out its purpose. Undoubtedly, the Legislature intended to allow compensation to those who were dependent upon an employee for support.

> From a reading of the various provisions of the Act touching the question of dependency, it is apparent that dependents other than blood relatives are entitled to compensation. The statute provides that certain blood relatives of a deceased employee may be considered dependents, and in addition thereto, the Act provides that persons who are members of the family of the deceased may also be dependents. This, in our opinion, clearly shows that the Legislature intended to give others than those related by blood the right to claim compensation as dependents by reason of their being members of the family of the deceased and dependent upon him for support. Otherwise, the phrase "member of the family" would be meaningless and wholly unnecessary.

> In paragraph E of Section 8, subsection 2, of the Act, quoted above, after stating that if there be neither widow, widower or certain

---

[5] La.Civ.Code art. 3506(12) defines family: "Family in a limited sense, signifies father, mother, and children. In a more extensive sense, it comprehends all the individuals who live under the authority of another, and includes the servants of the family.

16

blood relatives, provision is made for the payment of compensation to other dependents than those enumerated, without designating who these dependents may be. This clearly shows that the Legislature never intended that "family" was to be given a restricted meaning.

The supreme court reiterated this broad interpretation in *Thompson v. Vestal Lumber & Manufacturing Co.*, 208 La. 83, 118, 22 So.2d 842, 853 (1944) (on rehearing) (second alteration in original), in which the supreme court held that the term "legal dependent":

> [D]oes not mean legitimate—as distinguishing legitimate from illegitimate relations of the deceased employee. The term "legal dependents" means dependents who are legally entitled to compensation under the statute. The term is applicable to actually dependent members of the family of the deceased, as well as to the surviving relations who are conclusively presumed to have been dependent upon his earnings for support. In the opening sentence, and in the next following sentence, in this subsection of the statute, the term "legal dependents" is used in a context which leaves no doubt that the term "legal dependents" has reference to dependent members of the family of the deceased employee, as well as to the surviving relations who are conclusively presumed to have been dependent upon the earnings of the deceased employee for support. This meaning of the term "legal dependents" is emphasized in paragraph (D) of subsection 2, where it is declared: "In all other cases, the question of *legal and actual dependency* in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death." [The italics are ours.]

The supreme court relied on *Archibald* to find that the employee's illegitimate children were entitled to death benefits as dependent members of his family.

In *Henderson*, 354 So.2d 1031, the supreme court reversed a prior morality-based finding[6] that refused to accord "other dependent" status to a concubine. In reaching its decision, the supreme court stated:

> In the present case, the court of appeal reluctantly followed *Humphreys*, since it had not yet been overruled. However, the intermediate court correctly noted that the *Humphreys* decision is

---

[6] In *Humphreys v. Marquette Casualty Co.*, 235 La. 355, 377, 103 So.2d 895, 902 (1958), the supreme court stated, "We feel that we can add little to [the appellate court's] opinion, except to say that it was never within the contemplation of the legislature to include under the provisions of LSA-R.S. 23:1232, a dependent who had lived in open concubinage with the deceased during his lifetime."

inconsistent with *Archibald* and *Thompson*, cited above, and with the intent of the compensation act as a whole.

In these latter decisions we held that the workmen's compensation act was designed to protect all dependent members of the family household from the loss of support caused by a wage-earner's death through work-accident. The industry which caused the loss should bear it, not the individual nor the taxpayer through welfare benefits. "Undoubtedly, the Legislature intended to allow compensation to those who were dependent upon an employee for support." *Archibald*, at 11 So.2d 493-94. See *Thompson*, at 22 So.2d 857.

As Professor Malone noted in his authoritative treatise, the denial of compensation to the concubine because of moral turpitude "is more moralistic than it is sound. No other claimant need prove his moral worthiness so long as he or she is dependent. It would seem that the fault of the dependent concubine should no more exclude her from compensation than should the fault of the employee himself. . . . The social need for compensation here is as great as though the dictates of convention had been met. It does not seem fair that the employer or his insurer should benefit by the windfall." Malone, Louisiana Workmen's Compensation Law, Section 304, p. 399 (1951).

We are unable to find in the terms of the compensation act itself any legislative intent to deny compensation benefits to any dependent member of the decedent's family household because of moral unworthiness. Under the terms of the act, *all* dependent members of the family are entitled to compensation, subject only to the priority of preferred claimants who exhaust the statutory maximum weekly payments.

Further, we are unable to find any general legislative policy indicating a desire to punish a concubine by depriving her of all benefits or rights whatsoever because of her status. The status is not punishable by criminal penalty, for instance. Historically, the civil penalty has been, not to deprive the concubine of any right whatsoever to receive donations or testamentary dispositions, but only to limit the amount which may be donated. La.Civil Code art. 1481.

In *Sizeler v. Sizeler*, 170 La. 128, 127 So. 388, 389-90 (1930), for instance, we pointed out that "In the absence of express legislation on the subject, we have no judicial authority or power to draw a distinction between the classes of beneficiaries named in life insurance policies", so as to deny recovery to a concubine. Similarly, here, in the absence of indication that the legislature desired to exclude concubines from the dependency benefits otherwise allowable under the terms of the statute, we conclude that we erred in *Humphreys* in importing moral unworthiness as a criterion for eligibility for compensation benefits, and in thus excluding dependent concubines alone from the compensation benefits to which *all* dependent members of the deceased

18

wage earner's family household are entitled by statute. We therefore overrule *Humphreys*.

*Id.* at 1033-34 (footnotes omitted).

A question now arises whether the precedent set down in *Henderson* will continue in light of La.R.S. 23:1253, as amended. Prior to 2012, La.R.S. 23:1253 had virtually remained unchanged since 1916,[7] as follows:

> If there is no one wholly dependent and more than one person partially dependent, so much of the death benefit as each is entitled to shall be divided among them according to the relative extent of their dependency. No person shall be considered a dependent, unless he is a member of the family of the deceased employee, or bearing to him the relation of husband or widow, or lineal descendant or ascendant, or brother or sister, or child.

As previously stated, La.R.S. 23:1253 (emphasis added) was amended in 2012, to add the language at issue:

> If there is no one wholly dependent and more than one person partially dependent, so much of the death benefit as each is entitled to shall be divided among them according to the relative extent of their dependency. No person shall be considered a dependent, unless he is a member of the family of the deceased employee, or bearing to him the relation of husband or widow, or lineal descendant or ascendant, or brother or sister, or child. **Regardless of dependency, no payments shall be made to the concubine of the deceased employee nor the concubine's children, unless those children are related to the deceased employee by blood or adoption.**

The Louisiana Civil Code sets out the following rules of statutory construction. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La.Civ.Code art. 10. "The words of a law must be given their generally prevailing meaning."

---

[7] The only change occurred in 1926, when the legislature changed "legally adopted child" to "child." 1926 La. Acts No. 85, § 1.

La.Civ.Code art. 11. "When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La.Civ.Code art. 12. "Laws on the same subject matter must be interpreted in reference to each other." La.Civ.Code art. 13.

As stated, Irby Construction argues that a plain reading of the highlighted language, while allowing Avery death benefits, denies death benefits to Ms. Perez, because she was Mr. Chiokai's concubine. Conversely, Ms. Perez asserts that because she is Avery's mother, she is entitled to death benefits upon proof of actual dependency. In addition to the precedent set forth in *Henderson*, Ms. Perez bases her argument on the rule of statutory construction concerning the rule of the last antecedent.

The last antecedent rule was laid out in Sutherland's treatise on statutory construction, as follows:

> Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." Thus a proviso usually applies to the provision or clause immediately preceding it. *A qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one.* As with all the rules of interpretation, the last antecedent rule is merely another aid to discover legislative intent or statutory meaning, and is not inflexible and uniformly binding. In general, then, where the sense of an entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the qualifying word or phrase is not restricted to its immediate antecedent.

NORMAN J. SINGER AND SHAMBIE SINGER, 2A SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION, § 47:33 (7th Ed. 2010 & Supp. 2018) (emphasis added) (footnotes omitted).

In *Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S.Ct. 376, 380 (2003), the Supreme Court stated that "[w]hile this rule is not an absolute and can assuredly be overcome by other indicia of meaning, we have said that construing a statute in

20

accord with the [last antecedent] rule is 'quite sensible as a matter of grammar.' *Nobelman v. American Savings Bank*, 508 U.S. 324, 330, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)."

Applying the last antecedent rule in this instance, the qualifying phrase "unless those children are related to the deceased employee by blood or adoption" is separated from the antecedents "to the concubine" and "the concubine's children" by a comma. Thus, according to Sutherland, the placement of the comma indicates that the qualifying language should apply to both the concubine and the concubine's children. This interpretation would align the statute, in part, with the supreme court's holding in *Henderson*. However, La.R.S. 23:1253, as amended, would limit the death benefits awarded to concubines to only those concubines whose children were fathered or adopted by the decedent.

Because La.R.S. 23:1253 is susceptible of two constructions, we will review its legislative history in order to determine whether the legislature intended the statute to be construed broadly or narrowly. In *State Farm Mutual Automobile Insurance Co. v. U.S. Agencies, L.L.C.*, 05-728, 05-729, p. 5 (La.App. 1 Cir. 3/24/06), 934 So.2d 745, 748, *writ denied*, 06-933 (La. 6/16/06), 929 So.2d 1288), the first circuit noted that "[c]ommentary at legislative committee meetings and journals of the houses of the state legislature are helpful to courts in determining the purpose and true legislative intent behind a law. A court may take notice of these records and journals, where preserved, as they are a matter of public record."

Effective August 1, 2012, the legislature enacted La.R.S. 23:1020.1,[8] which laid out the purpose, legislative intent, and statutory construction principles

---

[8] La.R.S. 23:1021.1 was enacted by 2012 La. Acts No. 860, § 1.

21

applicable to workers' compensation matters from that time forward and reads, in pertinent part:

. . . .

**B. Purpose.** The legislature declares that the purpose of this Chapter is all of the following:

(1) To provide for the timely payment of temporary and permanent disability benefits to all injured workers who suffer an injury or disease arising out of and in the course and scope of their employment as is provided in this Chapter.

(2) To pay the medical expenses that are due to all injured workers pursuant to this Chapter.

(3) To return such workers who have received benefits pursuant to this Chapter to the work force.

**C. Legislative intent.** The legislature finds all of the following:

(1) That the Louisiana Workers' Compensation Law is to be interpreted so as to assure the delivery of benefits to an injured employee in accordance with this Chapter.

(2) To facilitate injured workers[] return to employment at a reasonable cost to the employer.

**D. Construction.** The Louisiana Workers' Compensation Law shall be construed as follows:

(1) The provisions of this Chapter are based on the mutual renunciation of legal rights and defenses by employers and employees alike; therefore, it is the specific intent of the legislature that workers' compensation cases shall be decided on their merits.

(2) Disputes concerning the facts in workers' compensation cases shall not be given a broad, liberal construction in favor of either employees or employers; the laws pertaining to workers' compensation shall be construed in accordance with the basic principles of statutory construction and not in favor of either employer or employee.

(3) According to Article III, Section 1 of the Constitution of Louisiana, the legislative powers of the state are vested solely in the legislature; therefore, when

22

the workers' compensation statutes of this state are to be amended, the legislature acknowledges its responsibility to do so. If the workers' compensation statutes are to be liberalized, broadened, or narrowed, such actions shall be the exclusive purview of the legislature.

Since none of goals outlined under the "Purpose" section of La.R.S. 23:1020.1 are specifically applicable to the issue at hand, we find them of no help in interpreting the meaning of La.R.S. 23:1253 that best conforms to the purpose of the law. La.Civ.Code art. 10.

During the 2012 legislative session, companion bills were introduced into the Louisiana Legislature seeking to amend La.R.S. 23:1231(B)(2), La.R.S. 23:1251(2), and La.R.S. 23:1253. Senate Bill 520 sought to amend La.R.S. 23:1231(B)(2),[9] relative to the payment of death benefits to dependents and surviving parents:

> However, if the employee leaves no legal dependents entitled to benefits under any state or federal compensation system, **one lump sum of seventy-five thousand dollars shall be paid to the surviving biological and adopted children of the employee to be divided equally among them, which shall constitute the sole and exclusive compensation in such cases.** If the employee leaves no legal dependents **and no biological or adopted children** under any state or federal compensation system, the sum of seventy-five thousand dollars shall be paid to each surviving parent of the deceased employee, in a lump sum, which shall constitute the sole and exclusive compensation in such cases.

House Bill 737 sought to amend La.R.S. 23:1231(B)(2),[10] as follows:

> (2) If the employee leaves no dependents, whether biological or adopted, entitled to benefits under any state or federal compensation system, one lump sum payment of seventy-five thousand dollars shall be paid to the employee's surviving biological and adopted children who are over the age of majority, to be divided equally among them, which shall constitute the sole and exclusive compensation in such cases.

---

[9] Words underlined and in boldface type are the proposed additions to the existing law.

[10] Words that are struck through are deletions to the existing law; words which are underlined are additions to the existing law.

(3) ~~However, if~~ the employee leaves ~~no legal dependents~~ decedents[11] entitled to benefits under ~~any state or federal compensation system~~ Paragraph (2) of this Subsection, the sum of seventy-five thousand dollars shall be paid to each surviving parent of the deceased employee, in a lump sum, which shall constitute the sole and exclusive compensation in such cases.

Senate Bill 520 also proposed to amend La.R.S. 23:1251(2), relative to the persons conclusively presumed to be dependent:

(2) A child under the age of eighteen years (or over eighteen years of age, if physically or mentally incapacitated from earning) upon the parent with whom he is living at the time of the injury, or until the age of twenty-three if enrolled and attending as a full-time student in any accredited educational institution. **A child under the age of eighteen years, or over eighteen years of age, (if physically or mentally incapacitated from earning, with a valid child support order from a court of competent jurisdiction against the deceased parent, regardless of whether child support is actually being paid, or until the age of twenty-three if enrolled as a full-time student in any educational institution.**

House Bill 737 sought the following amendment to La.R.S. 23:1251(2):

(2) A child under the age of eighteen years (or over eighteen years of age, if physically or mentally incapacitated from earning) upon the parent with whom he is living at the time of the injury of the parent, or until the age of twenty-three if enrolled and attending as a full-time student in any accredited educational institution. A child under the age of eighteen years (or over eighteen years of age, if physically or mentally incapacitated from earning) with a valid child support order from a court of competent jurisdiction against the deceased parent, regardless of whether child support is actually being paid, or until the age of twenty-three if enrolled and attending any accredited educational institution as a full-time student.

Finally, Senate Bill 520 and House Bill 737 both sought to amend to La.R.S. 23:1253, as follows:

If there is no one wholly dependent and more than one person partially dependent, so much of the death benefit as each is entitled to shall be divided among them according to the relative extent of their dependency. No person shall be considered a dependent, unless he is a member of the family of the deceased employee, or bearing to him the relation of husband or widow, or lineal descendant or ascendant, or brother or sister, or child. **Regardless of dependency, no payments shall be made to the concubine of the deceased employee nor the**

---

[11] The word "decedents" was later amended to "dependents"

24

**concubine's children, unless those children are related to the deceased employee by blood or adoption.**

During a March 21, 2012 hearing before the Senate Committee on Labor and Industrial Relations, Senator Sharon Weston Broome, Senate Bill 520's sponsor, stated that the purpose of the bill was to bring the workers' compensation laws in line with succession laws. She stated that the proposed amendment to La.R.S. 23:1251(B)(2) authorized a lump sum payment of $75,000.00 to an employee's majority descendants, in preference to his/her parents, regardless of dependency. Senator Broome further explained that the conclusive presumption of dependency, provided by La.R.S. 23:1251, was extended to the employee's minor children if a valid child support order was in effect against the employee, regardless of whether it was being paid. The only mention of the proposed amendment to La.R.S. 23:1253 occurred when Senator Edwin Murray questioned Senator Broome about a proposed amendment to the bill, which would have deleted the language pertaining to the concubine and the children of the concubine. However, this amendment was withdrawn without being formally voted on.

Representative Chris Broadwater discussed the intent of House Bill 737 before the House Committee on Labor and Industrial Relations on March 29, 2012. His explanation mirrored Senator Broome's explanation that the proposed amendment to La.R.S. 23:1231(B) sought to bring the statute in line with succession laws. Representative Broadwater further proffered an amendment to the bill, which struck the proposed amendment of La.R.S. 23:1253 from House Bill 737. He explained that it made no sense to exclude the children of a concubine from receiving death benefits, despite the fact that they had been raised by the employee "from the time they were a child." Thus, he stated that the language did not make good sense

25

and could lead to absurd consequences. This amendment was adopted by the committee.

During the Senate Committee on Labor and Industrial Relations' consideration of House Bill 737 on April 19, 2012, Representative Broadwater reiterated that the intent of his bill was to bring La.R.S. 23:1231 in line with succession law so that major biological and adopted children of the employee would receive the lump sum payment ahead of surviving parents and to extend the presumption of dependency to the employee's children if an existing child support order was in effect. When questioned about the proposed amendment to La.R.S. 23:1253 contained in Senate Bill 520, Representative Broadwater stated that although the proposed language had originally been included in his bill, it was stricken for the following reasons:

> [W]e struck that [language], and the reason we struck that, there was concern that it may lead to some absurd consequences in some cases. Under the original language of the bill, if you had a situation where . . . the husband, as being the deceased employee, if he had raised children as his own for their entire life, even though they were not his actual children, they would be denied an opportunity for benefits the way we currently had the bill drafted and that did not seem to be correct or possibly good social policy and so we elected to strike that from my version of the bill.
>
> . . . .
>
> That's correct, if [children not born of the marriage] could show actual dependency, it would still make them eligible for the benefit.

During consideration of Senate Bill 520 before the House Committee on Labor and Industrial Relations on April 19, 2012, Representative Broadwater, a member of the committee, was asked, in the absence of Senator Broome, to explain the reasoning behind House Bill 737's proposed amendment to La.R.S. 23:1253. He stated that he had originally included the language at issue in House Bill 737, for the following reasons:

26

In the initial draft of the bill, there was concern that you could have a situation where legitimate children of the deceased worker were being denied death benefits going to them, but instead going to the children of a concubine and so the initial draft of the bill sought to address that. However, I think what we failed to contemplate is that once you have the amendment to the current law as proposed in the bill, that allows for a child support order, you now have remedied that situation because you would now have several ways to show entitlement to the death benefits. Number one, actual dependency, which is a legitimate child who is actually or wholly or partially dependent upon that deceased worker's wages, or a legitimate child, who could not prove actual or partial dependency, but who at least had gone through the step of getting the child support enforcement order, so now they would not be deprived even though they were a legitimate child and should be entitled to a benefit. So once we add that, my feeling was that that provision relating to children of a concubine became no longer necessary and that's why I elected to strike it from my bill.

An amendment was then passed by the committee to delete the subject language from Senate Bill 520, and the bill, as amended, was passed out of committee. However, this amendment was rejected during a Senate floor vote on May 14, 2012, despite the fact that the Senate Committee on Labor and Industrial Relations had passed the companion bill, House Bill 737, out of committee without this language.

Senate Bill 520, enrolled as Act No. 793 on June 4, 2012, included the language, "Regardless of dependency, no payments shall be made to the concubine of the deceased employee nor the concubine's children, unless those children are related to the deceased employee by blood or adoption." House Bill 737, enrolled as Act No. 99 on May 2, 2012, contained no amendment to La.R.S. 23:1253. Both acts became effective on August 1, 2012.

Based on the foregoing, we believe that the main focus of Senate Bill 520 and House Bill 737 was to bring La.R.S. 23:1231's payment of death benefits in line with Louisiana's succession laws and to extend La.R.S. 23:1251's conclusive presumption of dependency to minor children that the employee was supporting through a child support order. We have no direct explanation from Senator Broome

27

for why she sought to amend La.R.S. 23:1253. All we have are Representative Broadwater's explanations for why he struck that same language from House Bill 737. Thus, we find Senate Bill 520's legislative history of no help in determining the legislature's intent in amending La.R.S. 23:1253.

In *Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products., Inc.*, 96-1716, 96-1727, p. 9 (La. 7/1/97), 696 So.2d 1373, 1378, the supreme court stated:

> Where a statute is ambiguous and susceptible of two constructions, the courts will give that construction which best comports with the principles of reason, justice, and convenience, for it is to be presumed that the legislature intended such exceptions to its language as would avoid its leading to injustice, oppression, or absurd consequences.

In *Perdomo v. RKC, LLC*, 17-112, p. 4 (La.App. 5 Cir. 11/29/17), 232 So.3d 90, 94 (citing *Breaux v. Hoffpauir*, 95-2933 (La. 5/21/96), 674 So.2d 234), the fifth circuit stated that "[o]ne of the primary purposes of the Workers' Compensation Act is to provide protection to workers; and a policy behind the Act is to keep the injured employee and his or her family from destitution." *Id.* In *Trahan v. Coca Cola Bottling Co. United, Inc.*, 04-100, pp. 6-7 (La. 3/2/05), 894 So.2d 1096, 1102, the supreme court stated, "In interpreting the Workers' Compensation Act, courts must be mindful of the basic history and policy of the compensation movement, which includes the provision of social insurance to compensate victims of industrial accidents." With regard to death benefits, the supreme court stated that "[u]ndoubtedly, the Legislature intended to allow compensation to those who were dependent upon an employee for support." *Archibald*, 11 So.2d at 493-94.

Based on these considerations, we find that the construction of La.R.S. 23:1253 that best comports with the principles of reason, justice, and convenience

28

and the policy behind the Workers' Compensation Law,[12] would be the one asserted by Ms. Perez. As the mother of Mr. Chiokai's child, and a person who, as a member of his family, was wholly and actually dependent upon him at the time of his death, it would be an injustice to deny Ms. Perez death benefits. Workers' compensation is a social policy that was designed to protect the injured worker and his family from destitution. While the legislature may have a legitimate social rationale for denying death benefits to a concubine and her children from another partner, that rationale falls when the concubine is the mother of the employee's child. Here, the parties admit that Ms. Perez, the mother of his child, was wholly dependent upon Mr. Chiokai at the time of his death. Thus, it would indeed be unreasonable to conclude that she was not a member of his family, and to hold otherwise would surely lead to an absurd consequence not countenanced by the legislature in its amendment of La.R.S. 23:1253. Accordingly, we affirm the judgment of the WCJ finding that Ms. Perez is entitled to receive death benefits as an "other dependent" of Mr. Chiokai.

Based on our finding affirming the award of death benefits to both Ms. Perez and Avery, we need not address Irby Construction's sixth assignment of error relating to the WCJ's grant of summary judgment in favor of Ms. Perez.

## *Assignments of Error Number Four and Number Five*

In its fourth and fifth assignments of error, Irby Construction argues that the WCJ erred in awarding $2,000.00 in penalties and $3,000.00 in attorney fees to both Ms. Perez and Avery in connection with the non-payment of death benefits to both parties. We agree.

Pursuant to La.R.S. 23:1201(F)(2), an employer's failure to provide workers' compensation benefits shall result in the assessment of penalties and attorney fees

---

[12] In La.R.S. 23:1020.1(A), the legislature stated that Chapter 10 of Title 23 (Labor and Workers' Compensation) was to be cited as the "Louisiana Workers' Compensation Law."

29

against the employer unless "the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." In *Brown v. Texas-LA Cartage, Inc*, 98-1063, pp. 8-9 (La. 12/1/98), 721 So.2d 885, 890 (footnote omitted), the term "reasonably controverted" was defined by the supreme court:

> The unambiguous language of La. R.S. 23:1201 clearly establishes that penalties and attorney fees for failure to timely pay benefits shall be assessed unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control. Unreasonably controverting a claim, which is the exception at issue in this case, requires action of a less egregious nature than that required for arbitrary and capricious behavior. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation. BLACK'S LAW DICTIONARY 104, 211 (6th ed.1990). Stated another way, such behavior arises from unrestrained exercise of the will or personal preference or lacks a predictable pattern. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 110, 333 (1966).
>
> The phrase "reasonably controverted," on the other hand, mandates a different standard. In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

Furthermore, "An employer should not be liable for penalties or attorney fees for taking a close factual or legal question to court for resolution." *Young v. City of Gonzales*, 14-1299, p. 9 (La.App. 1 Cir. 3/12/15), 166 So.3d 1070, 1077.

Because penalty and attorney fee awards are "imposed to deter indifference and undesirable conduct by employers and their insurers toward workers[,]" they are penal in nature; thus, the provisions of La.R.S. 23:1201(F) must be strictly construed.

30

*Trahan*, 894 So.2d at 1108. Whether such an award is warranted is a factual determination, which will not be reversed on appeal absent manifest error. *Bailey v. Rent A Center*, 18-677 (La.App. 5 Cir. 5/29/19), 274 So.3d 797. "[T]he mere fact that an employer loses a disputed claim is not determinative." *Id.* at 806.

In her oral reasons for judgment, the WCJ gave no reasons for awarding penalties and attorney fees to Ms. Perez and Avery, other than to state "that the defendant was arbitrary and capricious in [the] handling of this case[.]" However, we find that the WCJ was manifestly erroneous in awarding penalties and attorney fees due to the close legal questions presented in this matter. As stated, the issue of whether a concubine is entitled to death benefits is a question of first impression under La.R.S. 23:1253, as amended. Moreover, no case has ever addressed whether a posthumously born illegitimate child was entitled to death benefits from the date of the deceased employee's death, as opposed to the child's date of birth. The only reported case touching on this issue was *Eason*, 47 So.2d 114. However, because that matter dealt with a posthumously born child of a putative marriage, the holding in that case was not directly on point. Accordingly, we find that Irby Construction engaged in a non-frivolous legal dispute by bringing these two close and thought-provoking legal issues to court for resolution. Thus, the judgment of WCJ awarding Ms. Perez and Avery penalties and attorney fees is reversed.

### DISPOSITION

For the forgoing reasons, the judgment of the workers' compensation judge awarding death benefits to Avery J. Chiokai, from the date of Travis Chiokai's death, and back-due and future death benefits to Latashia V. Perez is affirmed; however, the judgment awarding Latashia V. Perez and Avery J. Chiokai, each, $2,000.00 in penalties and $3,000.00 in attorney fees is reversed. The costs of this appeal are assessed equally between the parties.

31

**AFFIRMED IN PART AND REVERSED IN PART.**